TRI COUNTY TELEPHONE ASSOCI-·
ATION, INC., and TCT West, Inc.,
Appellants (Petitioners),

v.

The WYOMING PUBLIC SERVICE COMMISSION; Steve Ellenbecker, Kristin H. Lee, and Steve Furtney, in their official capacities as Commissioners of the Wyoming Public Service Commission, Appellees (Respondents),

and

McLeod USA; and AT & T Communications of the Mountain States, Inc.,
Appellees (Intervenors).

No. 99–248.

Supreme Court of Wyoming.

Oct. 5, 2000.

Representing Appellants: Chris Edwards of Simpson, Kepler & Edwards, L.C., Cody, WY. Argument by Mr. Edwards.

Representing Appellees: Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Harry D. Ivey, Assistant Attorney General. Argument by Mr. Ivey.

Representing Appellees/Intervenors: Elizabeth Zerga of Herschler, Freudenthal, Salzburg, Bonds & Zerga, Cheyenne, WY for McLeodUSA; and Alan B. Minier of Rothgerber, Johnson & Lyons, L.L.P., Cheyenne, WY for AT & T Communications of the

Mountain States, Inc. Argument by Mr. Minier.

Before LEHMAN, C.J., and THOMAS, GOLDEN, and HILL, JJ., and STEBNER, D.J.

LEHMAN, Chief Justice.

Tri County Telephone Association, Inc. and TCT West, Inc. (collectively appellants) appeal an order of the Wyoming Public Service Commission (Commission). Because the Commission's order correctly applied the appropriate statutes and was in all respects in accordance with law, we affirm.

## ISSUES

Tri County presents this statement of the issues:

> Although their Petition for Review raises additional issues, Petitioners submit that the issue presented by the Petition for Review is limited to:
>
> 1. Was the decision of the Wyoming Public Service Commission contrary to law?

The Commission's brief includes this statement of the issue:

> Whether the Wyoming Public Service Commission's decision was in accordance with law when it determined the Tri County companies may not unilaterally set their own rates for noncompetitive services, notify the PSC of those rates, and determine the amount they will be subsidized by the Universal Service Fund?

Intervenors elected not to present a statement of the issues in their brief.

## FACTS

Appellants are telecommunications companies providing local exchange services to several Wyoming communities. Appellants applied to the Commission for a rate increase sufficient to recoup their total service long run incremental costs (TSLRIC), and also sought payments from the Universal Service Fund (USF)[1] to the extent that individual

---

1. The Universal Service Fund is authorized and governed by Wyo. Stat. Ann. § 37–15–501 (Lexis 1999), which reads:

(a) There is hereby established the universal service fund within the special revenue fund to be administered in accordance with this sec-

customers' rates exceeded 130% of the state-wide weighted average rate. On April 29, 1998, the Commission issued an order denying the changes sought, instead agreeing on rates proposed by the intervening Consumer Advocate Staff (CAS).

Eschewing traditional avenues for challenging the order, on November 25, 1998, each appellant filed, with the Commission, a Notice of Tariff Filing and Application for USF Funds. Those filings, and the accompanying price sheets, indicated the appellants' intent to begin charging a variety of rates, some as high as $527.29 per month for basic residential telephone service. Appellants also requested that "the Commission immediately order the Administrator of the Universal Service Fund to recalculate the amount of universal service support available to the company from the Wyoming Universal Service Fund to ensure that such funds are available at the time the tariffs are effective." If those rates became effective, appellants' payments from the USF would increase by $480,000 per year.

The CAS again received permission to intervene, as did AT & T and McLeodUSA. On March 9, 1999, the Commission issued its Order Removing Unlawful Price Sheets from Commission Records and Dismissing Associated Cases. Appellants petitioned for a re-

hearing, which the Commission denied. Appellants next filed a petition for review in the district court, along with a motion for a stay of the Commission's order. The district court granted a stay and has continued it until the appeal is decided. Both the Commission and AT & T moved for certification of the appeal to this court, which the district court granted on August 23, 1999.

### STANDARD OF REVIEW

■■■ We review appeals certified to this court pursuant to W.R.A.P. 12.09 with the same standard of review applicable in the district court. *US West Communications, Inc. v. Public Service Comm'n,* 989 P.2d 616, 618 (Wyo.1999). That standard is found in Wyo. Stat. Ann. § 16–3–114(c) (Lexis 1999), which provides the reviewing court shall:

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(C) In excess of statutory jurisdiction, authority or limitations·or lacking statutory right;

---

tion. The fund shall be administered by the commission. All telecommunications companies shall contribute to the universal service fund. The dates for contributions to the fund and disbursements from the fund shall be set by the commission, after notice and opportunity for hearing, as necessary to accomplish the objectives of the fund as specified in subsections (c) and (d) of this section. The costs of administering the fund may be included in determining required contributions.

(b) The commission shall after notice and opportunity for hearing, designate the method by which the contributions shall be calculated, collected and distributed in order to achieve the goals set forth in W.S. 37–15–102. The commission shall authorize an additional monthly charge to customers, in the amount specified by the commission, to recover each contributor's required payment to the universal service fund.

(c) The commission shall administer the monies in the universal service fund to assist only those customers of telecommunications companies located in areas of this state with relatively high rates for essential services. The commission, after notice and opportunity for

hearing, shall determine a reasonable amount and a fair method of distributing monies. The commission may authorize a credit to customer bills, in the amount specified by the commission, to reflect distributions received by the local exchange company from the universal service fund. The commission shall ensure that the method shall promote the emergence of competition in providing local exchange service.

(d) In accordance with the method of distribution determined by the commission, a telecommunications company shall receive funds under this section to the extent that its local exchange rates, after consideration of any contributions from the federal universal service fund, exceed one hundred thirty percent (130%) of the weighted statewide average local exchange rates.

(e) The operation of the universal service fund may be suspended by the commission, based upon a public interest finding, after notice and an opportunity for a hearing, that the fund is not then serving its intended purpose.

(f) The commission's decisions under this section shall be subject to the provisions of the Wyoming Administrative Procedure Act.

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Speaking specifically of the PSC, we have said:

The PSC, in exercising its statutory powers to regulate and supervise public utilities ... is required to give paramount consideration to the public interest, the desires of the utility being secondary. This court cannot usurp the legislative function delegated to the PSC in setting appropriate rates, but will defer to the agency discretion so long as the results are fair, reasonable, uniform and not unduly discriminatory.

*Mountain Fuel Supply Co. v. Public Service Comm'n*, 662 P.2d 878, 883 (Wyo.1983) (citations omitted). In recognition of the limited nature of our review, we said, "[t]he judicial function is exhausted when we can find from the evidence a rational view for the conclusions of the PSC." *Telstar Communications, Inc. v. Rule Radiophone Serv., Inc.*, 621 P.2d 241, 246 (Wyo.1980).

2. Wyo. Stat. Ann. § 37–15–203 reads:
(a) Prices for telecommunications services which have not been determined by the legislature or the commission to be competitive shall be regulated by the commission in accordance with this section.
(b) The prices of any local exchange company may contain provisions for incentives for improvement of the company's performance or efficiency, lowering of operating costs, control of expenses or improvement and upgrading or modernization of its services or facilities. Any local exchange company may apply to the commission for incentives and innovative or nontraditional price regulation, including price indexing. The commission shall issue a final order approving, modifying or rejecting any application made under this subsection within one hundred eighty (180) days of the filing date of the application with the commission. If no order is issued by the commission within the one hundred eighty (180) day period, the application shall be deemed approved as filed. If during consideration of an application for regulation under this subsection, the commission materially alters the plan as filed in the application, the applying local exchange company may notify the commission in writing, at any time, but not later than sixty (60) days after

## DISCUSSION

■ The Wyoming Telecommunications Act, which is codified at Wyo. Stat. Ann. §§ 37–15–101 through –501 (Lexis 1999), was enacted in 1995 to "provide a transition from rate of return regulation of a monopolistic telecommunications industry to competitive markets and to maintain affordable essential telecommunications services through the transition period...." Wyo. Stat. Ann. § 37–15–102 (Lexis 1999). The Act divides telecommunications services into two broad categories: competitive and noncompetitive. The services at issue here are classified as noncompetitive. The Commission's authority to regulate the prices of noncompetitive services comes from Wyo. Stat. Ann. § 37–15–203 (Lexis 1999).[2] *US West Communications, Inc. v. Public Service Comm'n (U.S. West I)*, 958 P.2d 371, 375 (Wyo.1998).

■ We have determined, however, that the Commission's rate-making powers over noncompetitive services are not unlimited. *US West I*, 958 P.2d at 374–75. The prescribed course is that the local exchange company will file price schedules for its noncompetitive services with the Commission, pursuant to Wyo. Stat. Ann. § 37–15–204(a) (Lexis 1999).[3] *Id.* at 374. If the Commission

any final commission order on the application, that it elects not to be price regulated as approved by the order. The local exchange company's prices shall then be regulated as they were prior to the application until such time as a new application is filed, approved and accepted.
(c) During the transition to total service long-run incremental costs pursuant to W.S. 37–15–402, noncompetitive services prices shall be established in public hearing in accordance with the Wyoming Administrative Procedure Act and other applicable provisions of this chapter.
(d) Any holder of a certificate of public convenience and necessity to provide local exchange service may elect to be regulated by a price index approved by the commission. The price index shall only apply to noncompetitive services offered by the exchange company. The commission may approve indexes which provide additional flexibility for nonessential telecommunications services and nonaccess services.

3. Wyo. Stat. Ann. § 37–15–204(a) reads:
A local exchange company shall file with the commission, in such form and detail as the

finds the proposed rates unreasonable, it has the authority to set them aside pursuant to Wyo. Stat. Ann. § 37–15–405 (Lexis 1999).[4] *Id.* We explained the Commission's function again, saying that the Wyoming Telecommunications Act "expressly limit[s] the [Commission's] rate setting powers to approval, modification, or rejection of a plan submitted by a company or the approval of a price index." *US West Communications, Inc. v. Public Service Comm'n (U.S. West II)*, 958 P.2d 376, 382 (Wyo.1998).

The gravamen of appellants' argument is that § 37–15–204(a) allows them to set rates unilaterally for noncompetitive services and make those rates effective by filing them with the Commission. They further contend that, having increased their rates, they are entitled to receive additional payments from the USF on demand. The Commission responds that § 37–15–204(a) is merely a procedural provision for implementing rates it has already approved pursuant to the application procedure outlined in § 37–15–203(b). The Intervenors also argue that appellants' view of the USF would allow service providers to continually raise their rates, thus requiring ever-increasing payments from the USF in an unchecked, unlimited, and, ultimately, ruinous cycle.

The resolution of this case lies in determining when a local exchange company must comply with the application procedure of § 37–15–203(b). Subsection (a) of that section unambiguously states, "[p]rices for telecommunications services which have not been determined by the legislature or the commission to be competitive shall be regulated by the commission in accordance with this section." That plain language appears to put appellants' local exchange services squarely within the Commission's regulatory authority. The parties disagree, however, over whether subsection (b) applies here. Appellants contend that it applies only to applications for "incentives and innovative or nontraditional price regulation, including price indexing," and further contend that their proposed rates do not fit within that category. The Commission argues that all rates for noncompetitive services must be submitted through the subsection (b) application procedure.

Appellants rely on *US West I*, where we said:

> The statutory language in the Telecommunications Act is clear and unambiguous.

---

commission may require, schedules showing all competitive and noncompetitive telecommunications services terms, conditions and prices, including prices set by contract, currently in effect and charged to customers by the company in this state. All prices for new noncompetitive telecommunications services, and any change in prices for noncompetitive telecommunications services, shall be filed thirty (30) days prior to the proposed effective date unless a shorter filing period is authorized by the commission. No price increase for a noncompetitive service shall be effective unless the customer has been given notice by the provider at least one (1) full billing cycle prior to the proposed increase. All price changes for competitive services shall be effective as provided for in the company's price schedule. No price or price change is effective until filed in accordance with this section. Prices charged for competitive services shall be in accordance with its price schedule unless a separate contract is negotiated. For purposes of this subsection, the rules, regulations, policies, practices and other requirements relating to services shall be filed with the commission in such form and detail as the commission may require. Rules, regulations, policies, practices and other requirements relating to competitive services shall be subject to the same requirements under this chapter as the prices of competitive services. Those relating to noncompetitive services shall be subject to the same requirements under this chapter as the prices of noncompetitive services.

4. Wyo. Stat. Ann. § 37–15–405 reads:

Any person, and the commission on its own motion, may complain to the commission concerning the reasonableness of the price of any noncompetitive telecommunications service. Any notice and hearing of any complaint shall be in accordance with the Wyoming Administrative Procedure Act and this chapter. The commission shall only set aside any price it finds after notice and hearing to be unreasonable or unreasonably discriminatory. If the commission sets aside a price as unreasonable or unreasonably discriminatory, the telecommunications company shall have sixty (60) days to file a new price which is reasonable. The company shall refund any charges found to be unreasonable as ordered by the commission. Any price set in compliance with the provisions of W.S. 37–15–402 is presumed to be fair and reasonable, subject to rebuttal by the commission or any party to the hearing.

The PSC fails to acknowledge that the Telecommunications Act limits the PSC's powers to: (1) setting aside an unreasonable rate which has been filed, or [ (2) ] approving, modifying, or [ ] rejecting a local exchange company's application for incentives or nontraditional price regulation.

The PSC may not sidestep the legislature's clear limitation of its powers, no matter how pristine its motives may be. Moreover, the legislature appears to have anticipated the resistance to the abrogation of the PSC's prior rate-making powers in Wyo. Stat. § 37–15–408. This statute specifically lists the PSC's statutory powers which carry over from the Public Utilities Act to the Telecommunications Act. Notably, not one of the statutes which formerly granted rate-making powers to the PSC is included in the Telecommunications Act. The legislature's detailed omission of these statutory provisions serves to remove any doubt as to the very limited rate-making powers which remain with the PSC.

*US West I*, at 375. The facts here, however, are distinguishable from those in *US West I*. In that case, U.S. West had not sought a change in its rates; rather, customers initiated a petition for changes. When U.S. West responded to the Commission's request for information, the Commission, of its own volition, elected to treat the proceedings as an application for innovative price regulation. *US West I*, at 376.

The difference between the cases, essentially, is the difference between rate making and rate regulation. As we said in *US West II* :

> The statutory language in Wyo. Stat. § 37–15–203 is clear and unambiguous. The PSC's contention that it continues to have the authority to set rates for noncompetitive telecommunications services fails to acknowledge that the new provisions expressly limit the PSC's rate setting powers to approval, modification, or rejection of a plan submitted by a company or the approval of a price index. Moreover, the company's ability *to reject* the PSC's order if its plan is materially altered, or *to elect* to be regulated by price index, is

clearly inapposite to the proposition that the PSC may set a price for services over the objection of the company.

*US West II*, at 382 (emphasis in original). That language clearly shows that while the Commission may not "set a price for services over the objection of the company," it still has regulatory authority over noncompetitive telecommunications services. Furthermore, a conclusion that the Commission has authority to regulate the prices of noncompetitive telecommunications services is necessary to give effect to § 37–15–203(a), which mandates that the Commission "shall" regulate such services. As the Commission points out, such a view is in keeping with its position that § 37–15–203 requires substantive regulation, while § 37–15–204 sets forth the procedural requirements for implementing prices approved by the Commission. We agree.

The Commission's authority to regulate appellants' noncompetitive telecommunications services is further evidenced by the conduct of appellants themselves. Before attempting to change their prices unilaterally, appellants submitted an application for a rate increase to the Commission. Only after the Commission approved a smaller increase than they asked for did appellants decide they were not subject to the application process at all.

The Commission's order is affirmed.