2003 WY 145

RT COMMUNICATIONS, INC.; Range Telephone Cooperative, Inc.; Union Telephone Company; and Dubois Telephone Exchange, Inc., Appellants (Petitioners),

v.

The PUBLIC SERVICE COMMISSION FOR the STATE OF WYOMING; and Contact Communications, Appellees (Respondents).

No. 02–144.

Supreme Court of Wyoming.

Nov. 10, 2003.

Representing Appellants: Bruce S. Asay of Associated Legal Group, LLC, Cheyenne, WY. Argument by Mr. Asay.

Representing Appellee Public Service Commission: Hoke MacMillan, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Harry D. Ivey, Assistant Attorney General. Argument by Mr. Ivey.

Representing Appellee Contact Communications: Alexander K. Davison and Wendy J. Curtis of Patton & Davison, Cheyenne, WY. Argument by Ms. Curtis.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] RT Communications, Inc., Range Telephone Cooperative, Inc., Union Telephone Company, and Dubois Telephone Exchange, Inc. (collectively petitioners) seek reversal of an order entered by appellee Wyoming Public Service Commission (PSC). After administrative hearing, PSC approved appellee Contact Communications' application (Contact) for a concurrent certificate of public convenience and necessity to provide local telecommunications exchange services. Eventually this matter was certified to this court after petitioners filed a petition of re-

view in the district court questioning such order. Upon our review, we affirm.

## ISSUES

[¶ 2] Petitioners identify the following issues:

[1.] Did the Wyoming Public Service Commission misinterpret the Wyoming statute for certificates of public convenience and necessity?

[2.] Did the Wyoming Public Service Commission err as a matter of law in refusing to follow the provisions of its own regulation?

[3.] Was the commission's finding that the applicant possessed sufficient technical, financial and managerial resources to provide safe, adequate and reliable local exchange service supported by substantial evidence?

[4.] Were the petitioners deprived of due process and a fair hearing by action of the commission in considering an ex parte document?

[5.] [Were t]he petitioners ... deprived of due process and a fair hearing by the commission's refusal to allow appropriate participation in the rehearing[?]

[6.] Was the decision of the commission contrary to law in that it impermissibly took official notice of non-cognizable facts?

PSC states the issues as:

I. Did the Wyoming Public Service Commission follow and apply applicable law when it granted the Certificate of Public Convenience and Necessity?

II. Is the Wyoming Public Service Commission's decision supported by substantial evidence?

III. Did the Wyoming Public Service Commission base its decision on an ex parte document?

IV. Were applicants provided due process in proceedings before the Wyoming Public Service Commission?

V. Should the Wyoming Supreme Court consider issues raised for the first time on appeal?

Contact postures the issues before this court in an affirmative phrasing:

1. The decision of the PSC was in accordance with law.

2. The decision of the PSC was supported by substantial evidence.

3. The letter from Contact Communications was correctly not considered by the Commission.

## FACTS AND BACKGROUND

[¶ 3] On April 2, 1997, Contact, then known as WYOCOM, filed an application with PSC for issuance of a certificate of public convenience and necessity to provide local telecommunications exchange services as a reseller of services in service areas with fewer than 30,000 access lines. On May 15, 1997, petitioners, along with TCT West, Inc. and Tri County Telephone Association, Inc., moved to intervene with respect to the application, and PSC granted this motion.

[¶ 4] On March 24, 2000, Contact amended its application. Thereafter, PSC approved the amended application orally in an open meeting, ruling that Contact had made a *prima facie* showing that it possessed sufficient technical, financial, and managerial resources to provide safe, adequate, and reliable local exchange services. Shortly after this oral approval, petitioners filed a motion to set aside PSC's action and requested that a fair hearing be held.

[¶ 5] On June 27, 2000, PSC issued a Notice and Order confirming its oral approval of the application. However, on October 6, 2000, PSC issued a procedural order setting a hearing concerning the motion to set aside PSC's approval of Contact's application, and PSC conducted a two-day hearing on January 25–26, 2001, regarding such issues. At the conclusion of this hearing, PSC orally advised the parties of its tentative decision.

[¶ 6] On April 9, 2001, the president of Contact sent a letter to PSC expressing Contact's frustration with the tentative ruling made by PSC, most particularly the restrictions PSC was considering placing on Contact upon granting the application. This letter was carbon copied to petitioners' attorney of record. On April 13, 2001, petitioners filed a Motion to Dismiss Application and Revoke Certificate. PSC issued its formal

memorandum opinion, findings, and order approving Contact's application for a concurrent certificate of public convenience and necessity to provide local telecommunications exchange services on May 2, 2001. This memorandum, findings, and order granted Contact's application but included the restrictions earlier verbally expressed to the parties.

[¶ 7] Contact then filed a petition for rehearing with PSC contesting certain restrictions PSC had placed on Contact and requesting clarification regarding the geographic area. This was followed by petitioners filing their objection to Contact's petition for rehearing. Eventually, PSC entered an order setting rehearing and specifying that the parties were required to file contemporaneous disclosure statements including the witnesses and documentary evidence they intended to offer at the rehearing. Petitioners objected to this disclosure proceeding, arguing that it was unfair that the disclosure be contemporaneous. Rather, petitioners asserted that Contact should be required to file its disclosure first, allowing petitioners to review such disclosure and conduct additional discovery and then file their disclosure. After consideration, PSC denied petitioners' objection. Subsequently, petitioners failed to file any disclosure as ordered by PSC, and PSC refused to allow petitioners to offer witness testimony at rehearing as a result.

[¶ 8] On July 23, 2001, PSC conducted a hearing on Contact's petition for rehearing. On December 5, 2001, PSC issued its Order on Rehearing affirming its previous grant of Contact's application but removing the previously imposed restrictions. Petitioners later filed their Petition for Review in the district court. On March 18, 2002, the district court certified this matter to this court.

### STANDARD OF REVIEW

[¶ 9] In *Sinclair Oil Corp. v. Public Serv. Comm'n,* 2003 WY 22, ¶¶ 6–7, 63 P.3d 887, ¶¶ 6–7 (Wyo.2003), we reiterated our standard of review with respect to administrative matters:

Our review of administrative decisions is guided by the standards set forth in Wyo. Stat. Ann. § 16–3–114(c):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*See Newman v. State ex rel. Workers' Safety & Compensation Div.,* 2002 WY 91, ¶ 9, 49 P.3d 163, ¶ 9 (Wyo.2002) and *McTiernan v. Scott,* 2001 WY 87, ¶ 11, 31 P.3d 749, ¶ 11 (Wyo.2001).

We further enunciated in *Powder River Coal Co. v. State Bd. of Equalization,* 2002 WY 5, ¶ 5, 38 P.3d 423, ¶ 5 (Wyo.2002):

When we review cases certified pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the court of the first instance. *State by and through Wyoming Department of Revenue v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 5, 18 P.3d 1182, ¶ 5 (Wyo.2001); *see also Union Telephone Company, Inc. v. Wyoming Public Ser-*

*vice Commission,* 907 P.2d 340, 341–42 (Wyo.1995). Judicial review of administrative decisions is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2001). *Buggy Bath Unlimited, Inc.,* ¶ 5; W.R.A.P. 12.09(a); *Everheart v. S & L Industrial,* 957 P.2d 847, 851 (Wyo. 1998).

In addition, in *Powder River Coal Co.,* at ¶ 6 (citing *Chevron U.S.A., Inc. v. State,* 918 P.2d 980, 983 (Wyo.1996) and *State by and through Dep't of Rev. v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 6, 18 P.3d 1182, ¶ 6 (Wyo.2001)), we noted when this court reviews questions of law posed in an administrative context, this court must conduct a de novo review. We affirm an agency's conclusions of law when they are in accordance with the law. However, when the agency has failed to properly invoke and apply the correct rule of law, we correct the agency's error. *Id. See also State ex rel. Workers' Safety & Compensation Div. v. Garl,* 2001 WY 59, ¶¶ 8–9, 26 P.3d 1029, ¶¶ 8–9 (Wyo.2001).

[¶ 10] We went on in *Sinclair Oil Corp.,* at ¶ 8:

> When issues are presented to us · concerning whether there exists substantial evidence in the record to support the administrative decision, we have described substantial evidence as: "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." *McTiernan v. Scott,* at ¶ 11.

>> The substantial evidence standard also requires that there be more than a scintilla of evidence. It is not required that the proof attain such a degree of certainty as to support only one conclusion to the exclusion of all others. Once the measure of evidence has surpassed the scintilla threshold, the possibility of drawing two inconsistent conclusions from the entire record does not mean that the conclusion drawn by the administrative agency is not supported by substantial evidence. Even where this court, after reviewing the record, arrives at a different conclusion, the court cannot substitute its judgment for that of the

agency's as long as the agency's conclusion is supported by substantial evidence.

*Joe Johnson Company v. Wyoming State Board of Control,* 857 P.2d 312, 314–15 (Wyo.1993) (quoting *Department of Employment, Labor Standards Division v. Roberts Construction Company,* 841 P.2d 854, 857 (Wyo.1992)). "For evidence to be sufficient to allow a 'reasonable mind' to accept an agency's conclusion, there must appear in the record evidence which allows either a definitive conclusion or a reasonable extrapolation based on the surrounding circumstances." *GID v. Wyoming State Board of Control,* 926 P.2d 943, 951 (Wyo.1996). *Id.* Therefore, when this court is charged with reviewing an agency's decision for substantial evidence pursuant to Wyo. Stat. Ann. § 16-3-114(c)(ii)(E),

> [t]hat duty requires a review of the entire record to determine if there is relevant evidence that a reasonable mind might accept in support of the agency's decision. *Joe Johnson Company,* 857 P.2d at 314–15. Occasionally, the process of review will necessarily require the reviewing court to engage in an assessment of the facts adduced during the administrative hearing. That assessment does not usually involve a reweighing or reconsideration of the basic facts found by the agency. However, as a by-product of that process, the reviewing court may arrive at an ultimate conclusion derived from those basic facts that is different from the agency's. A court will reach a different conclusion based on the evidence only in those situations where the agency's conclusion is clearly contrary to the weight of the evidence.

*McTiernan,* at ¶ 16 (footnote omitted). We have further stated in *Newman,* at ¶ 12 (quoting *State ex rel. Workers' Safety & Compensation Div. v. Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)) that the substantial evidence test to be applied is as follows:

> In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to

support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

[¶ 11] Finally, we recognized in *Sinclair Oil Corp.*, at ¶ 9:

Speaking specifically of PSC, we have said that PSC is required to give paramount consideration to the public interest in exercising its statutory powers to regulate and supervise public utilities. The desires of the utility are secondary. *Tri County Telephone Ass'n, Inc. v. Public Serv. Comm'n*, 11 P.3d 938, 941 (Wyo.2000) (citing *Mountain Fuel Supply Co. v. Public Serv. Comm'n*, 662 P.2d 878, 883 (Wyo. 1983)). Additionally, in recognition of the limited nature of our review, we have explained that the judicial function is exhausted when we can find from the evidence a rational view for the conclusions of the PSC. *Tri County Telephone Ass'n*, at 941 (citing *Telstar Communications, Inc. v. Rule Radiophone Servs., Inc.*, 621 P.2d 241, 246 (Wyo.1980)).

## DISCUSSION

### Applicable Law

[¶ 12] In its decision, PSC stated:

36. The Wyoming Supreme Court has determined that public interest considerations are applicable to the regulation of telecommunications companies in the state of Wyoming. (*Tri–County Telephone Association, Inc., and TCT West, Inc., v. The Wyoming Public Service Commission*, 11 P.3d 938 (Wyo.2000)). To this end, the Commission has determined that the public interest, at a minimum, requires that Contact demonstrate that it possesses sufficient technical, financial and managerial resources to provide safe, adequate and reliable local exchange services. This requirement is expressly applicable to telecommunications companies seeking a Con-

current Certificate of Public Convenience and Necessity to provide local exchange services in the service territories of local exchange companies with more than 30,000 access lines in the state of Wyoming pursuant to the provisions of W.S. § 37–15–201(b).

. . .

40. During the course of these proceedings, the [petitioners] alleged the applicability of W.S. § 37–2–205(a) relating to Certificates of Public Convenience and Necessity. While the provisions of W.S. § 37–2–205(a) are applicable to telecommunications companies pursuant to the provisions of W.S. § 37–15–408, the Commission rejects the [petitioners'] assertions that they are controlling in this case. The Commission finds that the provisions of W.S. § 37–2–205 relate specifically to Certificates of Public Convenience and Necessity to construct plant. The construction of plant is not at issue in this case. The Commission has never enforced the requirements of this statute upon telecommunications companies seeking Concurrent Certificates of Public Convenience and Necessity to provide local exchange telecommunications services in the state of Wyoming. The Commission finds that it would be inappropriate to do so in this case.

41. The [petitioners] have also alleged the applicability of Section 204 of the Commission's Procedural Rules and Special Regulations relating to applications for Certificates of Public Convenience and Necessity. While alleging the applicability of this rule, Mr. Clark acknowledged that it is "outdated and discuss[es] the construction of facilities." The Commission finds that this rule was originally promulgated in response to W.S. § 37–2–205. For the reasons stated in paragraph 40, above, the Commission rejects the applicability of Section 204 of its Procedural Rules and Special Regulations, to this case.

(Citations omitted.)

[¶ 13] Petitioners assert that Wyo. Stat. Ann. §§ 37–2–205(a) and 37–15–201(c) (Lexis Nexis 2003) control the issuance of a certificate of public convenience and necessity in this instance and that PSC erred as a matter

of law by not fully applying these statutes in making its determination and in applying Wyo. Stat. Ann. § 37–15–201(b). In particular, petitioners argue that both §§ 37–2–205(a) and 37–15–201(c) require a public utility to demonstrate that there is a need for its services before a certificate of public convenience and necessity may be granted and that no such showing was made in this case.

[¶ 14] Beginning with § 37–15–201(b) and (c), we note that it provides:

(b) The commission shall grant a concurrent certificate or certificates of public convenience and necessity to provide local exchange service in the service territory of a local exchange company with more than thirty thousand (30,000) access lines in the state if it finds, after notice and opportunity for hearing, that the applicant possesses sufficient technical, financial and managerial resources to provide safe, adequate and reliable local exchange services within the identified geographic area.

(c) Prior to January 1, 2005, in the service territory of a local exchange telecommunications company with thirty thousand (30,000) or fewer access lines in the state, the commission shall, after notice and opportunity for a hearing, issue a concurrent certificate or certificates of public convenience and necessity to provide local exchange service, only if the application clearly shows the applicant is willing and able to provide safe, adequate and reliable local exchange service to all persons within the entire existing local exchange area for which the certification is sought and the incumbent local exchange service provider:

(i) Consents to a concurrent certificate; or

(ii) Is unable or unwilling to provide the local exchange service for which the concurrent certificate is sought; or

(iii) Fails to protest the application for the certificate after notice and opportunity for a hearing; or

(iv) Has applied for and received a concurrent certificate to provide competitive local exchange telecommunications services in any area of this state; or

(v) On or after the effective date of this chapter, begins to provide one-way transmission of radio or video signals through terrestrial, nonsatellite local distribution facilities in an area with existing service.

Thus, its becomes apparent that the Wyoming legislature intended to draw a distinct line between the areas with more than thirty thousand access lines and those with thirty thousand access lines or less. Moreover, it would initially appear that Wyo. Stat. Ann. § 37–15–201(c) must be applied in this case because Contact applied in areas with thirty thousand access lines or less.

[¶ 15] However, the Tenth Circuit Court of Appeals for the United States in its holding in *RT Communications, Inc. v. Fed. Communications Comm'n*, 201 F.3d 1264 (10th Cir.2000), specifically affirmed the preemption by the Federal Communication Commission (FCC) of Wyo. Stat. Ann. § 37–15–201(c) and (d) pursuant to the provisions of § 253(b) of the Federal Telecommunications Act of 1996(FTA). In its opinion, the court held that the FCC's preemption was based on a reasonable interpretation of the statute and was not otherwise unconstitutional. That court further agreed with the interpretation rendered by the FCC that the requirements contained within Wyo. Stat. Ann. § 37–15–201(c) and (d) were not competitively neutral within the meaning of § 253(b) of the FTA. The court reached this conclusion because these statutes awarded certain local exchange carriers the ultimate competitive advantage—preservation of monopoly status—and simultaneously saddled potential new entrants with the ultimate competitive disadvantage—an insurmountable barrier to entry. The court also recognized § 253(b) of the FTA forbids any statute which prohibits or has the effect of prohibiting entry. *RT Communications*, at 1268. Therefore, given such preemption, Wyo. Stat. Ann. § 37–15–201(c) simply may not be applied in this case.

[¶ 16] We are then faced with determining whether PSC properly applied § 37–15–201(b) and appropriately concluded that § 37–2–205(a) was not applicable under the particular circumstances of this case. Upon review of the historical regulatory background regarding telecommunications com-

panies in Wyoming, we see that in 1995 the Wyoming legislature adopted the Wyoming Telecommunications Act (WTA) which made extensive changes to the existing laws in the area, including the laws governing the issuance of certificates. In doing so, the legislature expressed its intent:

It is the intent of this act to ensure essential telecommunications services are universally available to the citizens of this state while encouraging the development of new infrastructure, facilities, products and services. The provision of telecommunications services has been developed and regulated under a monopolistic environment. This act recognizes the increasingly competitive nature of the telecommunications industry and the benefits of competition. It is the intent of this act to provide a transition from rate of return regulation of a monopolistic telecommunications industry to competitive markets and to maintain affordable essential telecommunications services through the transition period, and the provisions of this act shall be construed to achieve those goals.

Wyo. Stat. Ann. § 37–15–102 (LexisNexis 2003). In addition upon enactment of the WTA, the legislature expressly eliminated telecommunications companies from the definition of "public utility" as previously defined in Wyo. Stat. Ann. § 37–1–101 and utilized when applying § 37–2–205. At that same time, the legislature enumerated which existing statutes were to continue to be applicable to telecommunications companies. Wyo. Stat. § 37–15–408. That statute provides in part (emphasis added):

W.S. 37–1–104 through 37–1–106, 37–2–102, 37–2–104, . . . 37–2 205(a), . . . inclusive, unless in conflict with other provisions of this chapter, are applicable to telecommunications companies and telecommunication companies shall be considered public utilities for the purposes of those provisions.

Hence, the legislature presumably meant for § 37–2–205(a) to apply with respect to telecommunications companies.

■ [¶ 17] Likewise, because of express reference, the legislature unquestionably intended that § 37–15–201 also be applicable to the granting of certificates to telecommunications companies. Section 37–15–201(a) states (emphasis added):

Except for those **telecommunications companies** that as of January 1, 1995, have a valid certificate of public convenience and necessity previously issued by the commission to provide local exchange services in the state, **all telecommunications companies** seeking to offer and provide local exchange service shall obtain a certificate of public convenience and necessity from the commission prior to providing that service in this state.

Wyo. Stat. Ann. § 37–2–205(a) provides (emphasis added):

(a) No public utility shall begin **construction** of a line, plant or system, or **of any extension of** a line, plant or system without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require **such construction.** This act shall not be construed to require any public utility operating outside of a city or town to secure a certificate for an extension into an area within which it has lawfully commenced operation, or for an extension into territory contiguous to its line, plant or system for which no certificate is in force and is not served by a public utility of like character or for any extension within or to territory already served by it, necessary in the ordinary course of its business. If any public utility, in constructing or extending its line, plant or system interferes or is about to interfere with the operation of the line, plant or system of any other public utility already authorized or constructed, the commission on complaint of the public utility claiming to be injuriously affected, may after hearing make such order and prescribe the terms and conditions for the location of the lines, plants or systems affected, as to it are just and reasonable. The power companies may, without the certificate, increase capacity of existing plants.

[¶ 18] In *Wyodak Resources Dev. Corp. v. Dep't of Rev.,* 2002 WY 181, ¶¶ 18–19, 60 P.3d 129, ¶¶ 18–19 (Wyo.2002), we recognized:

In the conduct of statutory interpretation, we begin by inquiring into the ordinary and obvious meaning of the words employed by the legislature according to the manner in which those words are arranged. If more than one reasonable interpretation exists, we resort to general principles of statutory construction. When the legislature has spoken in unambiguous terms, however, we are bound to the results so expressed. *State by and through Wyoming Department of Revenue v. Buggy Bath Unlimited, Inc.,* 2001 WY 27, ¶ 7, 18 P.3d 1182, ¶ 7 (Wyo.2001).

We have also observed:

It is the court's obligation to make sense out of a statute and give full force and effect to the legislative product; in construing statutes, intention of the lawmaking body must be ascertained from the language of the statute as nearly as possible. A statute must not be given a meaning which would nullify its operation if it is susceptible of another interpretation.

*Hasser v. Flint Engineering,* 647 P.2d 66, 69–70 (Wyo.1982). Likewise, we will not construe a statute in a way that renders a portion of it meaningless. *Fosler v. Collins,* 13 P.3d 686, 692 (Wyo.2000); *US WEST Communications, Inc. v. Wyoming Public Service Commission,* 989 P.2d 616, 619–20 (Wyo.1999).

[¶ 19] Review of the plain language utilized within § 37–2–205(a) evidences that the legislature intended that it apply to situations wherein a utility contemplated construction or the extension of a line, plant, or system. In this instance, Contact contemplated no such construction or extension. Contact merely requested that it be allowed to provide additional concurrent services with the current local exchange carriers on those lines which already existed in the area. Conversely, reviewing the wording used within § 37–15–201 and applying the ordinary meaning of such wording indicates that the legislature intended that statute to apply to the situation at hand. Contact's application determined which statute governed. Contact only requested to be allowed to provide telecommunications services by resale through use of the incumbents' facilities, and it did not apply for any construction or extension related certificates.

[¶ 20] Moreover, this conclusion is supported by our long-established rules of law that specific statutes control over general statutes involving the same subject and that the legislature intended no part of its enactments to be inoperative, superfluous, futile, or absurd. *Board of County Comm'rs v. Exxon Mobil Corp.,* 2002 WY 151, ¶¶ 30 and 33, 55 P.3d 714, ¶¶ 30 and 33 (Wyo. 2002); *Bryant v. State ex rel. Dep't of Transp.,* 2002 WY 140, ¶ 14, 55 P.3d 4, ¶ 14 (Wyo.2002); *Corkill v. Knowles,* 955 P.2d 438, 444 (Wyo.1998). We further conclude that the decision of PSC to apply § 37–15–201(b) is the most reasonable under the circumstances, particularly taking into account the directives enumerated in *RT Communications, Inc. v. Fed. Communications Comm'n,* 201 F.3d 1264. Through utilization of the criteria enumerated within § 37–15–201(b), PSC treated Contact's application like it would treat an application in an area with more than thirty thousand access lines. This ensured consistent treatment and thereby explicitly complied with § 253(b) of the FTA by ensuring that Contact was not faced with an insurmountable barrier to entry. Finally, in making this determination, PSC gave the required paramount consideration to the public interest when exercising its regulatory statutory powers over public utilities, *see Sinclair Oil Corp. v. Pub. Serv. Comm'n,* at ¶ 9, and complied with the intent of the Wyoming legislature expressly enumerated in § 37–15–102.

[¶ 21] In addition, petitioners complain that PSC improperly failed to follow its own administrative rules and regulations by not applying section 204 of its rules of practice and procedure. Section 204, which governs applications made under Wyo. Stat. Ann. § 37–2–205, reads as follows:

**Section 204. Applications for Certificates of Public Convenience and Necessity.** Any person who will become a public utility *after the construction* and operation of utility facilities shall prior to *commencing construction* file an application for a certificate of public convenience and

necessity including the following information[.]

(Emphasis added.) By the same rationale utilized above with respect to § 37–2–205(a), section 204 does not govern Contact's application. Again, the application of Contact did not involve the construction of a line, plant, or system. We therefore conclude PSC applied the appropriate rules with respect to its decision. Indeed, the record reflects PSC took a very deliberate, conscientious, and systematic approach in making its determination to ensure that the specific criteria existed.

### Substantial Evidence

[¶ 22] Contemporaneous with its complaints that PSC applied an incorrect legal standard in granting the application filed by Contact, petitioners argue PSC's determination was not supported by substantial evidence. In making its argument that insufficient evidence was presented to PSC to support its ultimate decision, petitioners complain that the financial and technical documentation filed and testimony elicited by Contact regarding these areas were inconsistent, deficient, or not credible.

■ [¶ 23] Upon review of the record, we conclude that Contact possessed sufficient managerial, financial, and technical resources to support the concurrent certificate granted by PSC. Contact presented evidence concerning its managerial resources by providing the names, background, and experience in the telecommunications industry of its president, vice-president, and other directors. Contact's president also testified concerning the pooling of employment talent and business facilities between itself and Wyoming.com. Contact's pre-filed testimony also disclosed that Contact's network was managed on a twenty-four-hour/seven-days-a-week basis through two levels of engineers and other networking means.

[¶ 24] Contact's financial capabilities were shown through submission of numerous financial documentation indicating sufficient equity and profitability. Contact was also able to show that it possessed an adequate line of credit. Furthermore, Contact demonstrated its knowledge of technical offerings and services required to provide telecommunications services and the capabilities of its employees to provide and monitor such services.

[¶ 25] We, therefore, determine PSC's findings and rulings were based on substantial evidence. Upon careful review and consideration of the entire record before us, we hold the record provides a rational basis for PSC's ultimate findings of fact and conclusions of law. As such, we hold these findings of fact and conclusions of law were not clearly contrary to the overwhelming weight of the evidence. We recognize, as we have on numerous other occasions, that we will not substitute our judgment for that of an agency when substantial evidence supports the decision rendered by the agency involved. *Sinclair Oil Corp. v. Pub. Serv. Comm'n,* at ¶ 38; *Elk Horn Ranch, Inc. v. Board of County Comm'rs,* 2002 WY 167, ¶ 13, 57 P.3d 1218, ¶ 13 (Wyo.2002); *Newman v. State ex rel. Workers' Safety and Compensation Div.,* 2002 WY 91, ¶ 12, 49 P.3d 163, ¶ 12 (Wyo. 2002).

### Ex Parte Allegations

[¶ 26] Petitioners also assert that PSC improperly relied upon an ex parte communication in making its decision and, as a result, petitioners were not afforded the right to a fair hearing which constitutes manifest injustice. Particularly, petitioners allege that the ex parte communication created a bias against Contact and that this bias can be seen in PSC's response to Contact's request for rehearing.

[¶ 27] As indicated previously, at the conclusion of the initial hearing held in this matter, PSC orally advised the parties of its tentative decision, which included certain restrictions PSC was considering placing on Contact when granting the application. Thereafter, Contact, through its president, sent a letter to PSC expressing Contact's frustration with the tentative ruling made by PSC, most particularly the restrictions identified. This letter was carbon copied to petitioners' attorney. Later, PSC issued its formal memorandum opinion, findings, and order approving Contact's application for a concurrent certificate of public convenience

and necessity to provide local telecommunications exchange services that granted Contact's application but included the restrictions on Contact earlier verbally expressed to the parties.

[¶ 28] Contact then filed a petition for rehearing with PSC contesting the restrictions PSC had placed on Contact and requesting clarification regarding the geographic area. PSC granted this petition for rehearing. PSC conducted a hearing on Contact's petition for rehearing and issued its Order on Rehearing affirming its previous grant of Contact's application but removing its previously imposed restrictions.

■ [¶ 29] In *Monn v. State*, 811 P.2d 1004, 1008 (Wyo.1991) (emphasis added), we recognized:

A judicial proceeding is said to be "ex parte when it is taken or granted at the instance and for the benefit of one party only, and *without notice to, or contestation by, any person adversely interested.*" Black's Law Dictionary, p. 517 (5th ed.1979). An ex parte investigation is "[a]n investigation conducted about a person who is not personally contacted or questioned." *Id.* at p. 517.

Similarly, Black's Law Dictionary, p. 597 (7th ed.1999) (emphasis added) defines "ex parte" as:

ex parte, *adv.* On or from one party only, usu. *without notice to or argument from the adverse party.*

ex parte, *adj.* Done or made at the instance and for the benefit of one party only, *and without notice to, or argument by, any person adversely interested.*

[¶ 30] We further identified in *Seid v. Seid,* 2001 WY 137, ¶¶ 14–15, 36 P.3d 1167, ¶¶ 14–15 (Wyo.2001):

In *Coletti v. State,* 769 P.2d 361, 362 (Wyo.1989), we held that merely because an ex parte contact might be censurable, it does not automatically require reversal and remand. *Also see Lund v. Lund,* 849 P.2d 731, 734–37 (Wyo.1993). In *Coletti,* it was established that the district court had received an ex parte communication from a deputy sheriff containing information that was designed to supplement an incomplete

presentence report. However, in that case we gave recognition to the rule that where a matter is tried to the court sitting without a jury, as well as in a circumstance where the court is pronouncing sentence, a presumption exists that the court will not be misled or confused by what is irrelevant and is able to eliminate that which is immaterial from that which properly may be considered. *Coletti,* 769 P.2d at 363. In addition, in *Coletti* we took into account the fact that the district court categorically disavowed that any use had been made of the ex parte communication. *Id.* Here, the district court disavowed ever having seen the letter upon which this claim focuses.

In a case where a guardian ad litem had ex parte contact with a district court, and we determined that it constituted an ethical impropriety, we held that reversal of a judgment required more than simply the occurrence of the ex parte communication. *Moore v. Moore,* 809 P.2d 261, 264 (Wyo. 1991). In that case, we espoused the rule that in order to lead to the reversal of a judgment in such an instance, a manifest injustice must appear. Further, in order to evaluate the presence of a manifest injustice, we look to the totality of the circumstances.

[¶ 31] In this instance, Contact's letter was carbon copied to counsel for petitioners. Thus, it technically does not constitute an ex parte document. In addition, petitioners clearly responded to this letter through the filing of their Motion to Dismiss Application and Revoke Certificate. In any event, even assuming that the letter constitutes an improper ex parte communication, upon our review of the totality of circumstances, we conclude that no manifest injustice occurred.

[¶ 32] Initially, we recognize that PSC specifically identified that it determined this letter did not constitute a formal motion and, consequently, no formal action was taken with regard to it. Moreover, PSC in its substantive findings contained within its Order on Rehearing, stated:

38. At the rehearing, Contact presented the testimonies of Mr. Steve Mossbrook and Mr. Christopher Savage.

39. Mr. Mossbrook testified on behalf of Contact and Wyoming.com, Contact's parent company. Mr. Mossbrook's testimony on behalf of Wyoming.com addressed the issue of the [47 U.S.C.] 214(e) restrictions upon Contact's certificate and the impact they would have on the service offerings of Wyoming.com. Specifically, Mr. Mossbrook testified regarding the cost of the services that Contact could provide Wyoming.com.

40. Mr. Mossbrook next testified on behalf of Contact. Mr. Mossbrook's testimony addressed the issues of the restrictions imposed upon the concurrent certificate of public convenience and necessity through the imposition of the 47 U.S.C[.] 214(e) eligible telecommunications carrier requirements. Mr. Mossbrook testified regarding cherry picking, stating that Contact does not "elicit anything that would specify an advantage that would be greater for certain customers than others in hopes of taking them away from the ILECs [incumbent local exchange carriers] in some way".

41. Mr. Mossbrook also testified regarding the ETC [eligible telecommunications carrier] issue and the burden it placed on Contact's CLEC [competitive local exchange carrier] entry. Specifically, Mr. Mossbrook testified that achieving ETC status meant the provisioning of voice service, which would require a large investment to purchase the equipment necessary to provide voice services. He testified that this would result in Contact competing heavily against the ILECs as a means of recouping the money spent on the new equipment in an effort to meet the ETC standards. Mr. Mossbrook stated that Contact did not have any immediate plans of offering voice services and without such a requirement, the services offered by Contact in the independent territories would be limited to data services.

42. Mr. Savage's testimony addressed issues concerning the [F]ederal Telecommunications Act of 1996. Mr. Savage testified regarding the requirements of 47 U.S.C[.] Sections 214, 253, and 251, and how they interrelate. Specifically, Mr. Savage testified that if Contact were to have to meet the 214(e) requirements, it might have some difficulty meeting that requirement if an ILEC exercised its right to a temporary exemption under Sections 251(f)(1) and 251(f)(2).

43. Mr. Savage also testified that the protections which the Commission sought to give the [petitioners] are available through the interconnections process and are not appropriately addressed during the certificate proceedings. Mr. Savage stated that the conditions on the certificate should be removed subject to the rights that any small telephone company may have under Section 251(f) to object to particular aspects of the interconnection and competition regime. He further stated that if the Commission is committed to a regime in which there will be competing providers of universal service in rural territories, then the condition that is on the certificate needs to be modified so that it more closely corresponds to the balance of rights and obligations of both competitors and small rural telephone companies that Congress put into the statute.

(Citations omitted.) PSC then formally recited the applicable law and found that the concerns which initially led to its imposition of restrictions when granting the certificate would be adequately addressed through the interconnection process and the protections afforded by 47 U.S.C. 251(f)(1). Consequently, PSC removed the previously ordered restrictions.

[¶ 33] Again, upon our review of the record, we confirm the findings of fact set forth by PSC within its Order on Rehearing. Moreover, we conclude that the reasoning utilized by PSC in removing the restrictions is based on relevant evidence that a reasonable mind might accept as rational for this conclusion. Therefore, while we certainly do not condone Contact's action in sending the letter to PSC, we hold that petitioners' argument is ultimately unpersuasive.

### Due Process Claims Upon Rehearing

[¶ 34] Petitioners also complain that PSC improperly required petitioners to file contemporaneous disclosure on rehearing and then improperly refused to allow peti-

tioners to present witness testimony at the rehearing when they failed to comply with PSC's directive.

It is well established in Wyoming that with regard to an agency's decision on the admission or exclusion of evidence and testimony, such is left within the sound discretion of the agency. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *In re: Worker's Compensation Claim of Shryack,* 3 P.3d 850, 855 (Wyo.2000) (quoting *Vaughn v. State,* 962 P.2d 149, 151 (Wyo. 1998)). An abuse of discretion has also been said to have occurred only when the decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it. *Hall v. Hall,* 2002 WY 30, ¶ 12, 40 P.3d 1228, ¶ 12 (Wyo.2002); *Everheart v. S & L Industrial,* 957 P.2d 847, 853 (Wyo.1998); *Goddard v. Colonel Bozeman's Restaurant,* 914 P.2d 1233, 1238 (Wyo.1996).

*Sinclair Oil Corp.,* 2003 WY 22, ¶ 41, 63 P.3d 887.

[¶ 35] As indicated previously, PSC entered an order setting rehearing and required that the parties file contemporaneous disclosure statements including the witnesses and documentary evidence they intended to offer at the rehearing by a date certain. Petitioners objected to this disclosure process, arguing that it was unfair that the disclosure be contemporaneous and argued that Contact should be required to file its disclosure first allowing petitioners to review such disclosure and conduct additional discovery and then file their disclosure. PSC denied petitioners' objection. Petitioners then failed to file any disclosure as ordered by PSC, and PSC refused to allow petitioners to offer witness testimony at rehearing as a result.

[¶ 36] In making its determination regarding these issues, PSC detailed in its Order on Rehearing:

32. The [petitioners'] objection was considered, at the Commission's open meeting held on July 17, 2001. For the reasons stated below, the Commission denied the relief requested in the objection.

a. The Commission determined that throughout the course of these proceedings, the [petitioners] have consistently sought to delay final resolution of this matter. The Commission viewed the filing of the objection as merely another delay tactic.

b. Section 104(c) of the Commission's Procedural Rules and Special Regulations provides that "prefiled testimony and exhibits shall be filed by applicants, intervenors and staff in the manner and time designated by the Commission by separate order." The establishment of contemporaneous prefiling deadlines is common practice, particularly in the context of rehearings.

c. The Commission determined that the [petitioners] were not disadvantaged by the contemporaneous prefiling deadline due to the fact that the issues to be addressed, on rehearing, had been limited to issues that were originally raised by the [petitioners] in the initial hearing.

33. The Commission viewed the [petitioners'] failure to prefile testimony, or request an extension of time in which to do so, as an appropriate method by which to avoid the contemporaneous filing deadline. Consequently, the Commission believed that the appropriate sanction, for this action, was to preclude the [petitioners] from offering witness testimony at the rehearing. The Commission issued its Order Denying Relief Requested in Objection to Procedural Order on July 20, 2001.

[¶ 37] Petitioners' main thrust in this area is that because new issues were being addressed upon rehearing, they should have been afforded prior disclosure by Contact and an opportunity to conduct discovery before having to make their own disclosure. Thus, they assert that they were denied due process given PSC's decisions. However, our review of the record indicates that PSC did limit the issues to be addressed on rehearing to the restrictions imposed by 47 U.S.C. 214(e) eligible telecommunications

carrier requirements, and such issues were addressed by petitioners at the initial hearing. Therefore, we fail to see how petitioners were prejudiced by PSC's ruling. In addition, although we cannot comment concerning the alleged delay by petitioners, as the entire record on appeal has not been designated before us, the record does reflect that Contact's amended application was filed on March 24, 2000, and that substantial time had elapsed since that time. Finally, petitioners were given more than adequate notice of the disclosure deadline but chose not to comply or file any other appropriate motion further addressing such issues. Accordingly, we conclude that PSC's rulings may not be characterized as an abuse of discretion because such decisions do not shock the conscience of this court and do not appear to be so unfair and inequitable that petitioners could not have reasonably followed PSC's directives.

[¶ 38] Additionally, petitioners allege that it was improper for PSC to take judicial notice of certain non-cognizable facts and that each of these actions by PSC violated petitioners' due process rights. Petitioners argue that they were not given appropriate notice that PSC was going to take judicial notice of certain facts in violation of Wyo. Stat. Ann. §§ 16-3-107(r) and 16-3-108(d) of the Wyoming Administrative Procedure Act. Hence, petitioners assert that PSC erred by indicating in paragraph 38 of its May 2, 2001 order that its ultimate finding that Contact had sufficient technical, financial and managerial resources to warrant issuance of a concurrent certificate was supported by findings made in an unrelated case.[1]

■ [¶ 39] Wyo. Stat. Ann. §§ 16-3-107(r) does require that findings of fact shall

be based exclusively on the evidence and matters officially noticed. Wyo. Stat. Ann. § 16-3-108(d) details the manner in which parties must be notified if an administrative body takes judicial notice of cognizable facts. However, under long-standing precedent, this court has also clearly established it will not consider those issues on appeal not previously raised. *State v. Campbell County Sch. Dist.*, 2001 WY 90, ¶ 35, 32 P.3d 325, ¶ 35 (Wyo.2001); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo.2000); *R.O. Corp. v. John H. Bell Iron Mountain Ranch Co.*, 781 P.2d 910, 913 (Wyo.1989). Petitioners failed to make such an argument to PSC, although they certainly had an opportunity to do so.

■ [¶ 40] Moreover, even if PSC's actions are deemed to be improper, we find them to constitute harmless error. Our review of the record discloses that sufficient evidence existed for PSC to conclude that Contact had sufficient technical, financial, and managerial resources to warrant issuance of a concurrent certificate above and beyond those facts judicially noticed by PSC.

## CONCLUSION

[¶ 41] Upon our careful review and analysis, we affirm the action of PSC in approving the application of Contact seeking a concurrent certificate of public convenience and necessity to provide local telecommunications exchange services.

---

1. In this order, PSC noted that Contact had previously shown that it possessed a level of technical, financial, and managerial resources that was sufficient to warrant the granting of a concurrent certificate of public convenience and necessity in an area with more than thirty thousand access lines in Wyoming in another matter and that Contact's technical, financial, and managerial resources met or exceeded those of other companies who were previously granted such a certificate.