2004 WY 164

PACIFICORP, Appellant (Petitioner),

v.

The PUBLIC SERVICE COMMISSION OF WYOMING, Steve Ellenbecker, Steve Furtney and Kristin H. Lee, in their Official Capacities as Commissioners of the Public Service Commission, Appellees (Respondents),

and

Wyoming Retail Merchants Association; Wyoming Lodging and Restaurant Association; Wyoming Hospital Association; Wyoming Automobile Dealers Association, Inc.; AARP; The Wyoming Industrial Energy Consumers; Kinder Morgan Interstate Gas Transmission, LLC; Canyon Creek Compression Company; and The Office of Consumer Advocate, Appellees (Intervenors).

No. 03–211.

Supreme Court of Wyoming.

Dec. 13, 2004.

Representing Appellant PacifiCorp: Paul
J. Hickey and Roger C. Fransen of Hickey &

Mackey, Cheyenne, Wyoming; James M. Van Nostrand and Sean E. O'Day, Portland, Oregon. Argument by Mr. Hickey.

Representing Appellee (Respondent) Public Service Commission of Wyoming: Patrick J. Crank, Wyoming Attorney General; Michael L. Hubbard, Deputy Attorney General; Harry D. Ivey, Assistant Attorney General; Douglas J. Moench, Senior Assistant Attorney General, Cheyenne, Wyoming. Argument by Mr. Moench.

Representing Appellee (Intervenor) Wyoming Industrial Energy Consumers: Robert M. Pomeroy, Jr., and Thorvald A. Nelson of Holland & Hart, LLP, Greenwood Village, Colorado; Marcy G. Glenn of Holland & Hart, LLP, Denver, Colorado; Walter F. Eggers III of Holland & Hart, LLP, Cheyenne, Wyoming. Argument by Mr. Pomeroy.

Representing Appellee (Intervenor) AARP: Dale W. Cottam of Hirst & Applegate, P.C., Cheyenne, Wyoming.

Representing Appellees (Intervenors) Wyoming Retail Merchants Association, Wyoming Lodging and Restaurant Association, Wyoming Hospital Association, and Wyoming Automobile Dealers Association, Inc.: Steven F. Freudenthal of Freudenthal, Salzburg & Bonds, PC, Cheyenne, Wyoming.

Representing Appellee (Intervenor) The Office of Consumer Advocate: Alexander K. Davison and Wendy Curtis Palen of Patton & Davison, Cheyenne, Wyoming. Argument by Mr. Davison.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] PacifiCorp appeals the denial by the Public Service Commission of Wyoming (the Commission) of its request for the recovery from Wyoming ratepayers of certain extraordinary and unanticipated net excess power costs incurred by PacifiCorp during what has become commonly referred to as the Western power crisis of 2000–01. We affirm.

## ISSUES

[¶ 2] PacifiCorp presents the following issues:

1. Did the Public Service Commission err when it relied upon a "financial harm" standard, which was not limited to PacifiCorp's Wyoming costs and revenues, to deny PacifiCorp's entire request to recover $91 million of wholesale power costs?

2. Did the Public Service Commission err when it based its decision on a "regulatory compact" theory that is inconsistent with both its cost pass-through rules and its statutory duty to determine just and reasonable rates?

3. Did the Public Service Commission err when it declared that granting PacifiCorp's request to include certain extraordinary wholesale power costs in rates would constitute retroactive ratemaking?

4. Did the Public Service Commission err when it based its decision on the application of appellate "end results" and "substantial evidence" standards?

5. Did the Public Service Commission err when it failed to make adequate findings of fact and conclusions of law and failed to explain its departure from agency precedent in making its decision?

[¶ 3] The appellees submitted three separate briefs. Each brief focuses on the issues raised by PacifiCorp in slightly different terms. The Public Service Commission simplifies the issue to: whether the Public Service Commission decision increasing PacifiCorp's rates was in accordance with the law and facts when the approved rate base did not include past losses PacifiCorp incurred purchasing power on the wholesale market?

[¶ 4] The Office of Consumer Advocate responds to PacifiCorp's issues with the following:

A. The Commission correctly applied the standards found in Wyoming statutes when determining PacifiCorp's application for Hunter outage costs and excess power costs.

B. There is substantial evidence to support the Commission's determination of just and reasonable rates which are in the public interest.

C. If the Commission applied a lower burden of proof upon the applicant, it is harmless error.

D. The Commission's order meets the requirements of Wyo. Stat. § 16-3-110.

[¶5] The Wyoming Industrial Energy Consumers along with the various other associations involved in this case, in a joint brief, phrase the issues as:

A. Was the Commission's decision to exercise its discretion to follow traditional regulatory practices rather than grant PacifiCorp's extraordinary requests for cost recovery supported by substantial evidence?

B. Was the Commission correct in concluding that raising rates due to the Hunter Outage would constitute impermissible retroactive ratemaking?

C. Was the Commission correct in concluding that recovering the deferred costs in rates would not be just and reasonable?

D. Did the Commission properly consider whether its decision would unduly harm PacifiCorp financially?

E. Did the Commission apply the appropriate legal standards to reach its decisions?

## FACTS

[¶6] The background facts are not contested. PacifiCorp is a public utility operating in Wyoming. PacifiCorp supplies power to its retail customers through means of its own power generation facilities as well as purchasing power on the wholesale market. During the timeframe in issue, PacifiCorp also engaged in wholesale power market trading activities. During 2000–2001, PacifiCorp's generation capacity diminished, in part for reasons determined to be beyond its control. Most significantly for this appeal, one of PacifiCorp's electric generation plants, known as the Hunter No. 1 (hereinafter referred to simply as "Hunter"), suffered a catastrophic failure. The Hunter plant was offline for repairs between November 2000 and May 2001. In addition, because of an ongoing drought, power generated from PacifiCorp's hydroelectric plants also was below normal.

[¶7] During the same timeframe, between the spring of 2000 and the spring of 2001, wholesale prices in the western power markets increased dramatically.[1] In order to meet its supply commitments, PacifiCorp was forced to purchase increased amounts of power from the volatile wholesale power market at unforeseeably high prices. The wholesale price PacifiCorp paid for power far exceeded the costs PacifiCorp would have incurred producing the same power from its Hunter plant. The wholesale price also far exceeded Wyoming retail rates. PacifiCorp covered these excess purchased power costs from May 2000 until the end of October 2000.

[¶8] On November 1, 2000, PacifiCorp filed an application, which the Commission granted, to begin a "deferred account." The deferred account allowed PacifiCorp to track costs that PacifiCorp wanted to preserve for later recovery. The costs PacifiCorp listed in the deferred account were the general net excess wholesale power costs PacifiCorp alleged it incurred in supplying Wyoming ratepayers. In granting PacifiCorp's application, the Commission expressly noted that the costs PacifiCorp would be allowed to list in the deferred account were for accounting purposes only. The determination of whether those costs would be recoverable would be determined at a later proceeding.

[¶9] On October 3, 2001, the Commission denied an application filed by PacifiCorp seeking permission to immediately begin to pass the deferred increased power costs on to its Wyoming retail ratepayers. PacifiCorp also attempted to include in the deferred account net excess power costs it alleged it incurred in purchasing power on the wholesale market to replace the power lost when the Hunter plant failed. The Commission determined that PacifiCorp had not given sufficient notice of its intent to include costs incurred as a result of the Hunter failure and denied PacifiCorp's attempt to include the Hunter costs in the deferred account. The

1. The multiple reasons for the price increases in the wholesale market are not pertinent to this appeal except to note that the Commission accepted that the price increases were not attributable to any action of PacifiCorp.

Commission also determined that there was no present need justifying an immediate pass-on of the excess power costs in the deferred account to PacifiCorp Wyoming's retail customers. The Commission ordered a full hearing regarding PacifiCorp's requested rate increase to cover its excess power costs. Because the Commission did not allow the inclusion of the Hunter costs, PacifiCorp, wanting all issues to be brought before the Commission together, dismissed its then pending application.

[¶ 10] On May 7, 2002, PacifiCorp filed the application for a rate increase that gives rise to the instant appeal. PacifiCorp sought a rate increase totaling approximately $122 million. PacifiCorp broke the application down into three interrelated parts: 1) an increase of $30.7 million in base rates; 2) an energy surcharge to recover $60.3 million in net power costs that were listed in the deferred account (excess power costs); and 3) an energy surcharge to recover $30.705 million in net power costs triggered by the outage of the Hunter generation plant ("Hunter costs"). PacifiCorp structured its application as an application for a general rate increase and two distinct riders, one for the general excess power costs and one for the Hunter costs. Ultimately, after a full hearing on all issues, the Commission granted PacifiCorp a general rate increase of approximately $8.8 million. The Commission did not allow any surcharge for the recovery of past extraordinary costs.

[¶ 11] PacifiCorp appealed to the district court. The district court certified this appeal to this Court pursuant to W.R.A.P. 12.09(b). PacifiCorp specifically is not appealing the amount of the general rate increase approved by the Commission. PacifiCorp is only appealing the Commission's decision to deny relief on the requested surcharges.

## STANDARD OF REVIEW

[¶ 12] This Court reviews cases certified to it pursuant to W.R.A.P. 12.09(b) under the same appellate standards applicable to the reviewing court of the first instance. Thus, pursuant to W.R.A.P. 12.09(a), our review is limited to those matters specified in Wyo. Stat. Ann. § 16–3–114(c) (Lexis-Nexis 2003):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

This Court defers to the administrative agency on questions of fact but reviews questions of law de novo. *See generally RT Communications, Inc. v. Public Service Comm'n for State of Wyoming*, 2003 WY 145, ¶ 9, 79 P.3d 36, ¶ 9 (Wyo.2003).

[¶ 13] For purposes of this appeal, the most important aspect of the standard of review guiding this Court when reviewing decisions by the Commission is as follows:

Speaking specifically of PSC, we have said that PSC is required to give paramount consideration to the public interest in exercising its statutory powers to regulate and supervise public utilities. The desires of the utility are secondary. *Tri County Telephone Ass'n, Inc. v. Public Serv. Comm'n*, 11 P.3d 938, 941 (Wyo.2000)

(citing *Mountain Fuel Supply Co. v. Public Serv. Comm'n*, 662 P.2d 878, 883 (Wyo. 1983)). Additionally, in recognition of the limited nature of our review, we have explained that the judicial function is exhausted when we can find from the evidence a rational view for the conclusions of the PSC. *Tri County Telephone Ass'n*, at 941 (citing *Telstar Communications, Inc. v. Rule Radiophone Serv., Inc.*, 621 P.2d 241, 246 (Wyo.1980)).

*Sinclair Oil Corp. v. Wyoming Public Service Comm'n*, 2003 WY 22, ¶ 9, 63 P.3d 887, ¶ 9 (Wyo.2003).

[¶ 14] The United States Supreme Court stated the general function of judicial review of a commission decision succinctly in *Federal Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 287–88, 88 L.Ed. 333 (1944) (citations omitted):

> Under the statutory standard of "just and reasonable" it is the result reached not the method employed which is controlling. It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences.

This Court has adopted *Hope* by reference in several opinions. *See, e.g., Mountain States Tel. and Tel. Co. v. Public Service Comm'n of Wyoming*, 698 P.2d 627 (Wyo.1985); *Application of Northern Utilities Co.*, 70 Wyo. 225, 255–57, 247 P.2d 767, 783–84 (Wyo.1952).

## DISCUSSION

### I. JURISDICTION

[¶ 15] As an initial matter, the Office of Consumer Advocate (OCA) has challenged the subject matter jurisdiction of this Court to determine this appeal. The specific question is whether the issues brought by PacifiCorp in this appeal are sufficient to vest this Court with jurisdiction to review the Commission order at issue. Under our standard of review as stated above, we are charged with reviewing the total effect of the rate order. We do not necessarily review the methodology used by the Commission but rather our review focuses on whether the end result is just and reasonable.

[¶ 16] The potential jurisdictional problem in this appeal stems from the fact that PacifiCorp has not appealed the order of the Commission in its entirety. PacifiCorp specifically states in its brief that it is not appealing the general rate increase. It is only appealing the Commission's rejection of its requested surcharges. The OCA argues that this Court is only authorized under our standard of review to determine if the final outcome of the rate case is just and reasonable. OCA argues that since PacifiCorp has provided no argument on the effect of the denial of the surcharges within the context of the grant of a general rate increase, this Court cannot determine whether the ultimate impact of the Order is just and reasonable.

[¶ 17] In the instant rate case proceeding, PacifiCorp requested a general rate increase of approximately $122 million. The $122 million was broken down into three components: the net excess power costs surcharge, the Hunter costs surcharge, and a general rate increase. The two surcharges were presented as riders to the general rate increase application because PacifiCorp acknowledges that the net excess power costs cannot fairly be treated as recurring costs that would otherwise be reflected in rates on a continual ongoing basis. Conceptually, the determination of whether to allow the two surcharges involves factors generally distinct from those involved in the general rate case. Further, PacifiCorp is not appealing the amounts involved but rather is challenging the legal principles the Commission relied upon to reject the surcharges. The remedy to be granted by this Court should PacifiCorp prevail on any of its arguments is simply a limited remand to the Commission with di-

rections to reconsider its decision denying the surcharges. Under these particular circumstances, we believe that the issues are sufficiently distinct that this Court is justified in accepting jurisdiction of this appeal pursuant to W.R.A.P. 9.02.[2] We will, however, carefully limit our analysis to the specific legal challenges brought by PacifiCorp.

## II. MERITS

### A. General Legal Background

[¶ 18] Having determined that this appeal is properly before this Court, we turn to the merits of the appeal. The rate case before the Commission was relatively straightforward. The surcharges PacifiCorp was seeking before the Commission represent costs accrued by the company during 2000 and 2001. It is money that has already been spent on the purchase of wholesale power. In general, as PacifiCorp itself has admitted in its approach to the calculation for the base rate, these extraordinary costs are not recoverable in general rates. Thus, PacifiCorp could only collect the proposed surcharges if it could present them in terms of a nontraditional rate mechanism that is just, reasonable and consistent with the public interest:

> **§ 37–2–121. When rate to be changed by commission; nontraditional rate making.**
>
> If upon hearing and investigation, any rate shall be found by the commission to be inadequate or unremunerative, or to be unjust, or unreasonable, or unjustly discriminatory, or unduly preferential or otherwise in any respect in violation of any provision of this act, the commission may fix and order substituted therefor such rate as it shall determine to be just and reasonable and in compliance with the provisions of this act: Such rate so ascertained, determined and fixed by the commission shall be charged, enforced, collected and observed by the public utility for the period of time fixed by the commission. The rates may contain provisions for incentives for improvement of the public utility's performance or efficiency, lowering of operating costs, control of expenses or improvement and upgrading or modernization of its services or facilities. Any public utility may apply to the commission for its consent to use innovative, incentive or nontraditional rate making methods. In conducting any investigation and holding any hearing in response thereto, the commission may consider and approve proposals which include any rate, service regulation, rate setting concept, economic development rate, service concept, nondiscriminatory revenue sharing or profit-sharing form of regulation and policy, including policies for the encouragement of the development of public utility infrastructure, services, facilities or plant within the state, which can be shown by substantial evidence to support and be consistent with the public interest.

Wyo. Stat. Ann. § 37–2–121 (LexisNexis 2003).

[¶ 19] Some confusion seems to exist on the part of PacifiCorp as to who bears the burden of proof and what level of proof is required. Section 37–3–106 places the burden of proof squarely on the public utility seeking a rate increase.[3] Section 37–2–121 requires PacifiCorp to prove by "substantial evidence" that its proposed surcharge is just, reasonable and in the public interest.

[¶ 20] The legislature has granted the Commission a great deal of discretion in the matters it may take into consideration when determining whether a rate is just, reasonable and in the public interest. The Commission is authorized to investigate almost every matter it may deem applicable:

> In conducting any investigation pursuant to the provisions of this act the commission may investigate, consider and determine

---

**2.** W.R.A.P. 9.02 allows this Court to reverse an appealable order in part as long as the reversal is "for error relating only to an issue which is not dependent for its proper trial on any other issue or issues found to have been properly tried[.]"

**3.** Wyo. Stat. Ann. § 37–3–106(a) (LexisNexis 2003) provides: "At any hearing as provided in this act involving an increase in rates or charges sought by a public utility, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the utility."

such matters as the cost or value, or both, of the property and business of any public utility, used and useful for the convenience of the public, and all matters affecting or influencing such cost or value, the operating statistics for any public utility both as to revenues and expenses and as to the physical features of operation in such detail as the commission may deem advisable; the earnings, investment and expenditures of any such corporation as a whole within this state, and as to rates in plants of any water, electrical or gas corporations, the geographical location thereof shall be considered as well as the population of the municipality in which such plant is located.

Wyo. Stat. Ann. § 37–2–119 (LexisNexis 2003). Other matters also are open to consideration: "In determining what are just and reasonable rates the commission may take into consideration availability or reliability of service, depreciation of plant, technological obsolescence of equipment, expense of operation, physical and other values of the plant, system, business and properties of the public utility whose rates are under consideration." Wyo. Stat. Ann. § 37–2–122(a) (LexisNexis 2003).

[¶ 21]   The statutory language is extremely broad. The legislature essentially is relying upon the expertise of the Commissioners to determine what factors are important under the facts of each specific rate case. Most importantly, neither the legislature nor this Court has ever adopted a specific methodology the Commission must follow in determining fair and just rates. *See, e.g., Mountain States Tel. and Tel. Co. v. Public Service Comm'n of Wyoming*, 698 P.2d 627 (Wyo. 1985); *Application of Northern Utilities Co.*, 70 Wyo. 225, 247 P.2d 767 (Wyo.1952). The ultimate goal is for the Commission to determine an ultimate rate that is just and reasonable. *See* Wyo. Stat. Ann. § 37–3–101 (LexisNexis 2003) ("All rates shall be just and

reasonable, and all unjust and unreasonable rates are prohibited.").

[¶ 22]   The problem with the appeal as presented by PacifiCorp is that PacifiCorp approaches the issues it raises backwards. PacifiCorp presents the issues as if it was legally entitled to recovery and the Commission had the burden of presenting and supporting reasons why PacifiCorp should not recover. Indeed, at oral argument counsel for PacifiCorp stressed that he believed that the Commission Order was outcome driven in that the Commission predetermined that it was not going to allow PacifiCorp to recover.[4]

[¶ 23]   What really happened is that the Commission started from the correct premise (accepted by PacifiCorp) that the costs PacifiCorp was seeking to recover through means of the surcharges were unrecoverable costs for purposes of general ratemaking. The burden has always been on PacifiCorp to present an adequate reason why it should recover its extraordinary purchased power costs through the means of surcharges. As previously stated, the Commission very clearly determined that PacifiCorp did not carry its burden of proving by substantial evidence that there was any justifiable reason in the public interest for PacifiCorp to collect its requested surcharges.

## B.   Issue 1—Financial Harm

[¶ 24]   The determination by the Commission that PacifiCorp failed to carry its burden of proof justifying non-traditional rate making could have ended the discussion. Instead, the Commission continued its analysis to determine if there were any other reasons why it should grant the requested surcharges. It is in this context that the Commission discussed the matter of financial harm to the company. Specifically, the Commission was complying with § 37–2–121 to ensure the ultimate rate decision would not be confiscatory or unremunerative.

---

**4.** To the extent PacifiCorp suggested that the Commission members were less than neutral in their approach to this case, the suggestion is not well-taken. "Members of administrative agencies are assumed to be men of conscience and intellectual discipline who are capable of judging the case before them fairly and on the basis of the evidence presented. One who asserts impermissible bias has the burden to overcome the contrary presumption and must affirmatively establish the existence of bias." *Tri–State Generation and Transmission Ass'n, Inc. v. Wyoming Public Service Comm'n*, 784 P.2d 627, 631 (Wyo. 1989) (citations omitted).

[¶ 25] PacifiCorp's argument is that the Commission used a financial harm standard as a standard that must be met in order to qualify for the surcharges. The Commission, however, did not establish a financial harm standard as a bar to recovery of otherwise recoverable costs. In fact, the Commission specifically stated in its Order at ¶ 127 that it "will not establish a bright line 'financial harm' regulatory test." The Commission only analyzed the financial harm aspect to determine if the financial condition of the company might require the Commission to grant some sort of rate relief that was not otherwise allowable.

[¶ 26] The above quoted statutes clearly are broad enough to grant the Commission power to review the financial status of PacifiCorp both as a whole and with regards to its Wyoming operations. In fact, such review is virtually required in a rate case. The Commission should put its rate analysis in context by examining every aspect of the utility's operations and the economic environment in which the utility functions. *Montana Dakota Utilities Co. v. Public Service Comm'n of Wyoming*, 847 P.2d 978, 988 (Wyo.1993) ("The general rate increase application traditionally covers all facets of a utility's operations, finances, rate design, and rate of return.") PacifiCorp at least implicitly accepted this when it presented evidence regarding the financial status of the company as a whole. Evidence was also presented relating solely to the Wyoming-specific operations of PacifiCorp. The Commission, in ¶ 134 of its Order, listed both the company-wide operating revenue and the Wyoming operating revenue and determined that PacifiCorp "showed that it achieved positive, albeit small, earned returns on equity in Wyoming even when the 'power crisis' was at its height."

[¶ 27] The Order reflects that the Commission considered both the company-wide and the Wyoming-specific operating revenue of PacifiCorp in determining just and reasonable rates. The Commission was well within its statutory authority in reviewing the overall business values of PacifiCorp. § 37–2–119. The Commission certainly did not establish a financial harm standard as a requisite to recovery of extraordinary and unforeseen costs. Under theses circumstances, this Court finds no error in the Commission's analysis of PacifiCorp's financial position, both company-wide and on a Wyoming basis, in the context of determining the justness and reasonableness of a rate increase.

### C. Regulatory Compact

[¶ 28] PacifiCorp argues that the Commission misinterpreted the concept of the "regulatory compact." The "regulatory compact" provides the fundamental basis for utility regulation. In general, the compact is a theoretical agreement between the utilities and the state in which, as a quid pro quo for being granted a monopoly in a geographical area for the provision of a particular good or service, the utility is subject to regulation by the state to ensure that it is prudently investing its revenues in order to provide the best and most efficient service possible to the consumer. In exchange, the utility is allowed to earn a fair rate of return on its rate base. *See generally United States Gypsum, Inc. v. Indiana Gas Co.*, 735 N.E.2d 790, 797 (Ind.2000).

[¶ 29] PacifiCorp argues that the Commission used the theory of the regulatory compact as a justification for holding that PacifiCorp's failure to implement the Commission's pass-on mechanism precluded PacifiCorp from recovering its extraordinary and unforeseen excess purchased power costs. In other words, PacifiCorp argues that the Commission has interpreted the theoretical regulatory compact as requiring PacifiCorp shareholders to bear the risk (and benefits) of any rate movement between rate cases absent the acceptance by PacifiCorp of the Commission's pass-on mechanism. PacifiCorp continues that never before has the Commission required, nor do general utility regulation principles require, the Commission's pass-on mechanism be in place before extraordinary and unforeseen costs can be recovered by a utility. PacifiCorp concludes by arguing that the Commission, by adopting its pass-on mechanism as the exclusive and mandatory method for recovering past costs, has abdicated its responsibility to determine

the justness and reasonableness of requested rate increases.

■ [¶ 30] By way of background, a pass-on mechanism allows a utility to obtain an adjustment of its rates to reflect fluctuations in purchased power costs without undergoing a formal rate proceeding. It permits a utility to pass along to its customers on a dollar-for-dollar basis any fluctuations in the purchased power costs experienced by the utility. The mechanism allows for rate changes when there is either an overrecovery or an underrecovery, thus ensuring utilities can recover net excess power costs and also ensuring that ratepayers are not overcharged. *See generally Montana Dakota Utilities Co.*, 847 P.2d at 989. The Commission's pass-on mechanism is reflected in Commission rules and regulations in Sections 249 and 250:

Section 249. Electric, Gas and Water Wholesale Utility Commodity Purchase Pass on Procedure. Pursuant to W.S. 37-3-106 (1977) as may be amended and the rate filing requirements of this Chapter, a utility may file an application to pass on to its utility customers in their rates, known or prospective cost increases or decreases in the utility's wholesale utility commodity; and the same may be authorized, subject to public notice, opportunity for hearing, and refund, if the evidence of record shows that:

(a) The pass on is for wholesale utility commodity cost increases and decreases not under this Commission's jurisdiction;

(b) The pass on will not increase the utility's rate of return, and its rate of return is at or below that last authorized by the Commission (if the rate of return is in excess of that authorized the pass on amount will be reduced accordingly);

(c) The pass on is applied on an equal or proportionate basis to all class rates and the rate therein (excluding minimum charges);

(d) All pass on charges are filed as a separate cumulative rate rider or surcharge which will be blended into base rates at appropriate intervals in general rate case proceedings or as otherwise ordered by the Commission;

(e) There is provision for interest on over-collections to be made part of the refund. Interest will include any interest received by the utility as ordered by the Federal Energy Regulatory Commission and, otherwise or in addition thereto, interest as determined by the Commission; and

(f) As a part of all pass on filings under this rule and balancing account filings under Section 250, the applicant utility must provide documentation that the gas, electric or water commodity costs supporting the proposed rate change are the most economical option reasonably available to the utility and its rate payers. The documentation should demonstrate all efforts and options available to the utility to serve its customers at the lowest possible cost consistent with safe and reliable service.

Section 250. Electric, Gas and Water Wholesale Utility Commodity Balancing Account as the Basis for Periodic Pass on Filings.

(a) This regulation shall apply only to electric, gas or water wholesale utility commodity purchases not under this Commission's jurisdiction which are proposed to be passed on by a utility to its customers on a periodic basis. Any electric, gas or water utility may file an application for a proposed tariff pursuant to this Commodity Balancing Account regulation and the tariff filing provisions of this Section. This Commodity Balancing Account regulation does not preclude the Commission from duly issuing orders governing special problems involving the recovery of future gas, power, fuel or water costs.

(b) The proposed Commodity Balancing Account tariff applied for by a utility shall include a description of the planned method of calculating the cost increases or decreases of wholesale commodity purchases utilizing an energy unit measurement (Btu, etc.) uniform with its authorized rates, and setting forth as is appropriate general provisions for determinations of volumes, purchase sources including storage, and taxes. At the time of the initial filing by a utility of its proposed Commodity Balancing Account tariff, the utility will refile its rate sheets with all separately stated sur-

charges or riders being combined and blended into its base rates. The Commission authorized Commodity Balancing Account tariff effective date shall be the commencement and anniversary date of the periodic Commodity Balancing Account.

(c) Upon authorization of its tariff, the utility shall establish its Commodity Balancing Account and shall monthly calculate the actual wholesale commodity purchases and adjust the Commodity Balancing Account for over and under recoveries. The Commodity Balancing Account shall on a current basis reflect all monthly credits and debits and be available for audit by the Commission at any time.

(d) For each period as set forth in the utility's Commodity Balancing Account tariff, the utility shall file an application conforming with Commission Regulation 249 for a pass on rate increase or decrease for the ensuing period calculated pursuant to its filed Commodity Balancing Account tariff and including interest as required by 249(e).

Wyoming Public Service Commission Rules and Regulations, Chapter 2, *General Regulations*, §§ 249, 250 (July 31, 1992).

[¶ 31] PacifiCorp, in arguing that the Commission has made its pass-on mechanism the exclusive means by which extraordinary and unanticipated costs can be recovered, misunderstands the Order. The Commission did not hold that its pass-on mechanism was the exclusive means by which PacifiCorp could have recovered its excess net power costs. Rather, the Commission only discussed PacifiCorp's election to forego the protections provided by the pass-on mechanism in its analysis of whether the proposed surcharges were just and reasonable.

[¶ 32] The Commission, as authorized by statute, analyzed PacifiCorp's business practices, especially in the area of wholesale power trading. There is no doubt that PacifiCorp's business strategies as applied to wholesale power trading activities directly impacted the decision of the Commission on whether to grant PacifiCorp's requested surcharges. With regards to the Hunter costs, in ¶ 126 of its Order, the Commission found:

PacifiCorp seeks here to include Hunter No. 1 costs in rates through a three year surcharge—an amortization mechanism to collect excess power costs beyond the level of those already allowed for in PacifiCorp's rates. By our Rules 249 and 250, we have long ago established procedures: [i] for passing on to customers changes in wholesale commodity costs which are outside of the Commission's jurisdiction (such as the prices paid in the wholesale power market which is under the exclusive jurisdiction of the federal government); and [ii] accounting for and, over time, collecting those wholesale commodity costs accurately on a dollar-for-dollar basis. PacifiCorp has never elected to establish such a mechanism to provide for the identification and collection of power costs, preferring instead to be content with recovering the level of purchased power costs allowed in the rates established in its general rate cases. In doing so, PacifiCorp has taken on itself the risk that higher power costs between rate cases would not be collected in rates, but also accepted the benefit of the dollars that would accrue to it and its shareholders if wholesale power costs decreased between rate cases. The evidence in this case shows that PacifiCorp has thereby experienced both benefits and detriments over the last decade from its decision. It was only when wholesale power costs increased quickly to very high levels during the 2000–2001 "power crisis" that PacifiCorp considered seeking reimbursement for the additional power costs it was incurring, including those attributable to the Hunter No. 1 generating unit outage. PacifiCorp's application for a surcharge amounts to no more than a request that ratepayers reimburse it for a previous loss. PacifiCorp argues that this is a matter of "fairness;" but such fairness is impermissibly one-sided and not in the public interest. Even though there has long been a mechanism available to it in Wyoming to address and accurately collect wholesale purchased electricity costs, PacifiCorp knowingly accepted for itself the risks inherent in not having such a mechanism in place.

The Commission carried the same finding over to its discussion of the excess purchased power costs. In its discussion of the excess purchased power costs, the Commission found, at ¶ 196:

> The deferred power cost portion of this case shares with the Hunter No. 1 portion the common issue of the impact of PacifiCorp's increasing involvement in the wholesale market without a corresponding increase in generation capability which resulted in a worsening balance of loads and resources, increasing the risk in a volatile market. The substantial evidence shows that PacifiCorp's management implemented a specific strategy to emphasize and increase wholesale market activities for the company's own gain which resulted in a sharp decline in the percentage of retail sales in comparison to overall sales. This strategy significantly increased the risk to PacifiCorp ratepayers and shareholders. Because it was PacifiCorp's own choice to seek profit in the wholesale market through a strategy that exposed its rate payers to risk (which was *exacerbated* by the "power crisis" but not *caused* by it), it should not now be allowed to recover for the consequences of its decision.

[¶ 33] In analyzing PacifiCorp's business strategy, specifically regarding its wholesale power trading activities, the Commission determined that PacifiCorp engaged in a specific managerial strategy in not implementing the Commission's pass-on mechanism. The Commission noted in ¶ 198 that no evidence had been presented suggesting that PacifiCorp had implemented a pass-on mechanism in any of the states it serves. By not implementing this pass-on mechanism, PacifiCorp's stockholders, and not Wyoming ratepayers, benefited from any profit PacifiCorp could make in its wholesale power market purchases. Conversely, however, PacifiCorp also accepted the risk that any increase in purchased power costs would be born by its stockholders instead of by Wyoming ratepayers. This arrangement ultimately resulted in PacifiCorp earning a net gain in Wyoming (as well as company-wide) during the 1990s. It was only after wholesale power market prices increased dramatically that PacifiCorp sought to require ratepayers to reimburse it for its losses.

[¶ 34] The Commission found that PacifiCorp's deliberate business decision to increase its wholesale power market trading activities, without the protection of a pass-on mechanism, dictates against a finding that PacifiCorp's current requested surcharges are just and reasonable. The Commission did not hold that PacifiCorp could only recover its excess purchased power costs through the timely adoption of the Commission's pass-on mechanism. Instead, the Commission fulfilled its obligation to independently determine if the requested surcharges were just and reasonable within the context they were sought. We find no error in the Commission's analysis. Indeed, it would set a poor precedent if PacifiCorp were allowed to recover under these circumstances. PacifiCorp knowingly placed itself in a position which, while earning a profit when things went well, was very risky in that PacifiCorp could incur great losses if the market turned. There would be no risk to this decision if PacifiCorp could turn around and force ratepayers to reimburse it for those losses. PacifiCorp made its bed. It is just and reasonable to require PacifiCorp now to lie in that bed.

### D: Retroactive Ratemaking

[¶ 35] The Commission determined that allowing the surcharges under the circumstances would constitute legally prohibited retroactive ratemaking. PacifiCorp argues that several exceptions to the prohibition apply. This Court has explained the prohibition against retroactive ratemaking in the following terms: "The rule against retroactive ratemaking is a generally accepted principle of public utility law which recognizes the prospective nature of utility ratemaking and prohibits regulatory commissions from rolling back rates which have already been approved and have become final." *MGTC, Inc. v. Public Service Comm'n of Wyoming*, 735 P.2d 103, 107 (Wyo.1987). Put simply, the rule against retroactive ratemaking prohibits the Commission from setting future rates to allow a utility to recoup past losses or to refund to consumers excess

utility profits. *See generally* Stefan H. Krieger, *The Ghost of Regulation Past: Current Applications of the Rule Against Retroactive Ratemaking in Public Utility Proceedings*, 1991 U. Ill. L.Rev. 983 (1991). Certainly PacifiCorp's request for the surcharges to recover past purchased power costs falls squarely within the ambit of retroactive ratemaking.

■ [¶ 36] The rule does, of course, have its exceptions. "As one court has observed, '[t]he specter of retroactive ratemaking must not be viewed as a talismanic inhibition against the application of principles based upon equity and common sense.' " *MGTC, Inc.*, 735 P.2d at 107 (quoting *Roberts v. Narragansett Electric Company*, 470 A.2d 215, 217 (R.I.1984)). The problem with PacifiCorp's argument on this issue it that, even should PacifiCorp be correct in arguing that the surcharges it requested would fall within an exception to the rule, that still would not change the outcome of this appeal. The requested surcharges would still be subject to a "just and reasonable" analysis. As already explained, the Commission determined that PacifiCorp did not carry its burden of proving the imposition of the requested surcharges would be just and reasonable under the circumstances. Since analysis by this Court on the issue of retroactivity will have no affect on the outcome of this appeal, this Court will not analyze PacifiCorp's arguments on this issue any further.

## E. Evidentiary Standards

■ [¶ 37] We briefly discussed the burden of proof above. Section 37–2–121 requires PacifiCorp prove by "substantial evidence" that its proposed surcharge is just, reasonable and in the public interest. This statutory standard is not to be confused with the standard of review applied by this Court. As used in the statute, substantial evidence is the legislative expression of the level of proof a utility must meet before the Commission will consider a non-traditional ratemaking method proposed by the utility.

■ [¶ 38] In the case sub judice, in ¶¶ 320 and 321 of its Order, the Commission specifically held that PacifiCorp did not meet its burden of proof justifying the grant of its requested surcharges. The Commission stated: "We conclude that PacifiCorp, as a matter of law, has not provided substantial evidence to justify the granting of the requested surcharge" in reference to the net excess power costs (¶ 320) and in reference to the Hunter costs (¶ 321). The Commission did not err by holding PacifiCorp to the "substantial evidence" standard as this finding by the Commission is in accord with § 37–2–121.

[¶ 39] PacifiCorp seems to be challenging the Commission's determination on several other issues that went against PacifiCorp that its findings were supported by substantial evidence. This Court need not address the propriety of the use by the Commission of the substantial evidence standard in those instances. A careful review of the record reveals that the Commission's other findings, at best, supported alternative reasons not to grant PacifiCorp's requested surcharges. The primary reason—PacifiCorp's failure to produce substantial evidence supporting the surcharges—is not influenced or altered by the other findings of the Commission. PacifiCorp's failure to meet its burden of persuasion is determinative and this Court need not address other findings by the PSC.

## F. Adequacy of the Order

■ [¶ 40] PacifiCorp argues that the Order is not supported by adequate findings of fact and conclusions of law. This Court has consistently held that an administrative order must contain all the information necessary for this Court to know why the administrative body concluded as it did. *See, e.g., Himes v. Petro Engineering & Const.*, 2003 WY 5, ¶ 19, 61 P.3d 393, ¶ 19 (Wyo.2003); *Mekss v. Wyoming Girls' School, State of Wyo.*, 813 P.2d 185, 201–02 (Wyo.1991); *FMC v. Lane*, 773 P.2d 163, 166–67 (Wyo. 1989).

[¶ 41] PacifiCorp's specific argument on this point is that, in one paragraph, the Commission adopts financial adjustments proposed by certain appellees that brought the dollar amount of the proposed surcharge for the excess power costs PacifiCorp was seeking down to zero. The Commission, however, specifically determined that this was an

alternative finding supporting denial of the surcharge. The paragraph objected to by PacifiCorp could therefore be eliminated in its entirety without affecting the outcome of this appeal. As such, we have no need to discuss the issue.

[¶ 42] PacifiCorp also argues that the Order generally does not adequately explain why its proposed surcharges were denied. Our review of the Order, however, does not support PacifiCorp's general contention. The Order is over 103 pages long, containing over 327 paragraphs separated into sections dealing individually with each of the three elements of PacifiCorp's requested rate increase plus other considerations. Upon reading the Order, this Court finds that it is fully informed of the findings of fact and the conclusions of law made by the Commission. We have had no difficulty in analyzing the Commission's decisions in the face of PacifiCorp's challenges. The Order is sufficient to allow this Court to confidently decide that the Commission did not adopt any new practices or precedents as argued by PacifiCorp. The Order adequately reveals the basic facts found by the Commission, and explains the statutory and traditional ratemaking principles the Commission applied to those basic facts in determining that the surcharges proposed by PacifiCorp were not just and reasonable.

## CONCLUSION

[¶ 43] Ultimately, the Commission denied PacifiCorp's request to recover its prior costs by means of a surcharge because PacifiCorp presented no adequate argument on why such recovery would be just and reasonable under the circumstances. The Commission has wide discretion in determining how to handle the recovery of costs. Utility companies, however, also bear a burden to ensure that, when they seek to recover costs, they do so in a way that is just and reasonable. The Commission determined that the requested surcharge was not a just and reasonable method for PacifiCorp to recover past costs. Under these particular facts and circumstances we do not find the decision to be arbitrary or capricious. PacifiCorp did not bear its burden of proving

by substantial evidence that imposing surcharges on current Wyoming ratepayers to recover costs incurred several years ago would be just and reasonable. Affirmed.